## Appendix B – Employment Agreement

THIS EMPLOYMENT AGREEMENT (the "Agreement") is made and entered into this 7th of November 2005, by and between Tradebot Systems, Inc., a Missouri corporation, with a principal place of business located at 320 Armor Road, Suite 210, North Kansas City, Missouri, 64116 ("the Company") and Brendan Forrest, an individual ("Employee").

### RECITALS

WHEREAS, the Company develops and uses proprietary automated trading software; and

WHEREAS, the Company desires to hire Employee or to continue to employ Employee, and Employee desires to be hired by the Company or to continue to be employed by the Company, upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, the employment of Employee, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1.  Employment. The Company agrees to employ Employee and Employee agrees to provide services to Company subject to the terms and conditions of this Agreement.

    1.1  Nature of Employment. Employee primarily works at the Company's office under the direction of supervisory personnel. The Company may require or allow Employee to work at his residence. The Company may also require Employee to travel on company business. The Company reserves the right to alter or revise the terms and conditions of Employee's employment as the Company deems necessary.

    1.2  Hours of Work. Employee is expected to work full time, generally on all days the NASDAQ market is open for business. Employee receives paid time off in accordance with the Company's Vacation Policy. Employee works a standard day of at least eight hours. Employees will generally work forty hours per week. In the event Employee is employed in a position that is not exempt as defined by the Fair Labor Standards Act and is required to work in excess of forty hours in a given week, the Company agrees to pay overtime in accordance with state and federal law. Employee agrees to obtain the written authorization of the Company prior to working overtime.

1.3 Restrictions.

(A) Contracts. Employee may not make contracts or commitments on behalf of the Company without first obtaining the Company's express written consent.

(B) License. Tradebot grants no right or license to Employee under any of the Company's patents, copyrights or trade secrets as a result of this Agreement.

1.4 Rules. Employee acknowledges that from time to time the Company may promulgate workplace policies and rules. Employee agrees to fully comply with all such policies and rules and understands that failure to do so may result in disciplinary action up to and including immediate discharge.

1.5 At Will Employment. The Employee and the Company acknowledge that the employment of Employee by the Company is "at will" which means that Employee's employment may be terminated at any time by either party with or without cause or notice. During the tenure of Employee's employment and excluding any periods of vacation and sick leave to which the Employee may be entitled, the Employee agrees to devote full time during normal business hours to the business of the Company and to use Employee's best efforts to perform faithfully and efficiently such responsibilities as may be assigned Employee.

2. Compensation.

2.1 Salary. In consideration for the covenants and agreements contained herein, the Company agrees to pay Employee and initial monthly salary of $ 7,916.00 [handwritten]. The Company may change Employee's monthly salary at any time without Employee's consent.

2.2 Bonus. The Company may, in its sole discretion, from time to time, pay a bonus to Employee based upon a bonus policy that may be established by the Company for Employee, which the Company may terminate or change at any time without Employee's consent.

2.3 Benefits. In further consideration for Employee's promises and covenants herein, the Company agrees to provide certain benefits to Employee.

(A) Retirement Plan. Employee may participate in the Company's retirement plan. The Company currently offers a SIMPLE ERA administered by Charles Schwab. Employee understands and agrees that the Company may terminate its retirement plan or change its terms without Employee's consent.

(B) <u>Health Insurance</u>. The company has established a Premium Only Plan in which Employee will be eligible to participate. Under this program, Employee may elect to pay premiums on a pre-tax basis for individual health insurance covering Employee and/or Employees family in accordance with the terms and conditions of that plan. Employee understands and agrees that the Company may terminate its health insurance plan or change its terms without Employee's consent.

(C) <u>Holidays and Vacations</u>. Employee receives pay for vacation and holidays in accordance with the Company Vacation Policy.

3. <u>Confidentiality</u>.

3.1 <u>Confidential Information, Solicitation, and Competition</u>.

(A) <u>Consideration for Restrictions and Covenants</u>. The parties hereto acknowledge and agree that the principal consideration for this Agreement consists of Employee's employment by the Company. The sufficiency of said consideration is acknowledged by Employee and the Company.

(B) <u>Confidentiality</u>. Employee recognizes and acknowledges that the knowledge of the Company's proprietary information including, but not necessarily limited to: documents, software (including source code and documents related to Company software), devices, future plans, business affairs, customer lists, trade secrets, product designs, marketing strategies, business operations, copyrights, trading models, and strategies as they may exist from time to time, are a valuable, special, and unique asset of Company's business (the "Confidential Information"). Employee shall not disclose, during or after Employee's employment under this Agreement, the Confidential Information to any person or other entity for any reason or purpose whatsoever other than to perform Employee's duties under this Agreement. Employee also acknowledges that the Company takes reasonable and prudent measures to protect the Confidential Information including limiting access to the Company's premises, employing a system of passwords for computer access, requiring that all employees enter into confidentiality agreements, and providing access to the Confidential Information on a "need to know" basis.

(i) Upon termination of Employee's employment for whatever reason and irrespective of whether said termination is voluntary or not, Employee agrees to immediately deliver

(ii) Employee shall retain in the strictest confidence and secrecy the Confidential Information after the termination of Employee's employment with the Company for whatever reason and irrespective of whether said termination is voluntary on Employee's part.

to the Company all records, data, memoranda, models, manuals, notes and other material of any nature whether electronic or hard copy which are in his possession or control and which are or relate to the Confidential Information.

(C) <u>Disclosure of Inventions</u>. Employee will promptly and fully disclose to the Company, whether or not requested by the Company, any and all ideas, improvements, discoveries, inventions, software, trademarks, copyrights, proprietary information, know-how, processes or other developments or improvements (collectively, the "Inventions"), whether or not Employee believes them to be patentable, that Employee conceives or first actually reduces to a plan, practice or device, either individually or jointly with others, during the term of Employee's employment with the Company, that result from any work performed by Employee in his capacity as an Employee of the Company or arise out of Employee's use of the Company's equipment, supplies, facilities or trade secret information, whether conceived or developed during the Company's business hours or otherwise. Employee will keep current, accurate and complete records of all Inventions, which records will belong to the Company and at all times be kept and stored on the Company's premises. The Inventions will be the sole and exclusive property of the Company. During the term of Employee's employment by the Company and at any time thereafter, Employee, at any time upon the request of the Company, will execute and deliver an assignment or assignments of any and all applications, plans, devices and other uses relating to the Inventions that the Company deems necessary or convenient to apply for, obtain or maintain patents of the United States, and any other foreign countries, for the Inventions and to assign and convey to the Company or its nominee the sole and exclusive right, title and interest in and to the Inventions. Employee will provide any and all aid and assistance deemed necessary by the Company to protect the Company's interest in the Inventions with respect to any disputes arising out of any unauthorized use or infringement of the Inventions or any patents issued in relation thereto.

(D) <u>Non-Solicitation of Employees</u>. While employed by the Company, and for a two (2) year period following the termination of

Employee's employment with the Company for whatever reason and irrespective of whether said termination is voluntary on Employee's part, the Employee shall not, directly or indirectly, for himself or on behalf of or in conjunction with any person, partnership, corporation or other entity, (i) employ or seek to employ any person who is at the date of termination of Employee's employment, or was at any time within the six-month period preceding the Employee's date of termination, an Employee of the Company or any of its affiliates or otherwise solicit, encourage, cause or induce any such Employee of the Company or any of its affiliates to terminate such Employee's employment with the Company or such affiliate for the employment of another company (including for this purpose the contracting with any person who was an independent contractor of the Company or an affiliate during such period) or (ii) take any action that would interfere with the relationship of the Company or its affiliates with their suppliers and franchisees without, in either case, the prior written consent of the Company's President, or engage in any other action or business that would have an adverse effect on the Company or its affiliates.

(E) <u>Non-Competition</u>.

    (i)    At no time during the term of employment and for two (2) years from the time immediately following the termination of Employee's employment with the Company for whatever reason whether voluntary or involuntary, Employee agrees that Employee will not directly or indirectly, whether as an employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, engage in or assist others to engage in any enterprise or activity that competes, whether directly or indirectly, with the Company's business anywhere within the United States.

    (ii)    Employee agrees that during the two (2) year period following the termination of Employee's employment, Employee will not, whether as an employee, officer, director, independent contractor, stockholder, partner or otherwise, solicit, contact, or service or cause another person to solicit, contact, or service, either directly or indirectly, any of the Company's customers, prospective customers, sales leads, or suppliers with whom the Company had an existing business relationship or had plans to form a business relationship during the year preceding termination of Employee's employment with the Company.

3.2 Relief. The parties hereto hereby acknowledge that the provisions of this Section 3 are reasonable and necessary for the protection of the Company and its affiliates. Employee acknowledges that the business of the Company is highly competitive and because the Company's business activities are national in scope, the geographic restrictions on competition contained in this section of this Agreement are necessary to protect the Company's business and confidential information. In addition, the Employee further acknowledges that the Company and its affiliates will be irreparably harmed if such covenants are not specifically enforced. Accordingly, the Employee agrees that, in addition to any other relief to which the Company may be entitled, the Company will be entitled to seek and obtain injunctive relief (without the requirement of any bond) from a court of competent jurisdiction for the purposes of restraining the Employee from any actual or threatened breach of all covenants contained in this Agreement. Employee further agrees that should the Company elect to remedy any actual or threatened breach of this Agreement by filing suit in a court of competent jurisdiction, in addition to its other remedies, the Company shall be entitled to a judgment and award against Employee in an amount equal to the Company's reasonable attorney's fees and costs associated with enforcing any term of this Agreement.

4. Successors.

   4.1 This Agreement is personal to the Employee and without the prior written consent of the Company shall not be assignable by the Employee. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

   4.2 This Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns.

5. Expenses. The Company agrees to reimburse Employee for reasonable out-of-pocket expenses incurred while on Company business in accordance with the Company's expense reimbursement policies.

6. Notices.

   6.1 Changes. The parties may change addresses for notices at any time by giving written notice.

   6.2 Addresses. All notices required or permitted under this Agreement must be in writing and are deemed delivered when delivered in person or deposited in the United States mail, postage paid, addressed as follows:

To Tradebot:

Tradebot Systems, Inc.
Attn: Chief Executive Officer
320 Armour Road, Suite 210
North Kansas City, MO 64116

To Employee:

Brendan Forrest
13744 W. 157th Terr.
Olathe, KS 66062

7. Miscellaneous.

   7.1 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, without reference to principles of conflict of laws.

   7.2 Merger. This Agreement contains the entire understanding of the parties hereto and constitutes the only agreement between Company and Employee regarding the employment of Employee by Company. This Agreement supersedes all prior agreements, either express or implied, between the parties hereto regarding the employment of Employee by Company.

   7.3 Amendment. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

   7.4 Severability of Provisions. Each of the sections contained in this Agreement shall be unenforceable independently of every other section in this Agreement, and the invalidity or unenforceability of any section shall not invalidate or render unenforceable any other section contained in this Agreement. The Employee acknowledges that the restrictive covenants contained in this Agreement are a condition of this Agreement and are reasonable and valid in geographical and temporal scope and in all other respects. If any court or arbitrator determines that any of the covenants contained herein, or any part of any of them, is invalid or unenforceable, the remainder of such covenants and parts thereof shall not thereby be affected and shall be given full effect, without regard to the invalid portion. If any court or arbitrator determines that any of such covenants, or any part thereof, is invalid or unenforceable because of the geographic or temporal scope of such provision, such court or arbitrator shall reduce such scope only to the extent necessary to make such covenants valid and enforceable.

8. Waiver. The Employee's or the Company's failure to insist upon strict compliance with any provision hereof or any other provision of this Agreement or the failure to assert any right the Employee or the Company may have hereunder shall not be deemed to be a waiver or subsequent breach of such provision or right or any other provision or right of this Agreement.

IN WITNESS WHEREOF, the Employee has hereunto set the Employee's hand and the Company has caused these presents to be executed in its name on its behalf, all as of the day and year first above written.

TRADEBOT SYSTEMS, INC.
By: _____
Title: PRESIDENT + CEO
Date: 11/10/2005

EMPLOYEE
_____
Print Name: Brendan Forrest
Date: 11·7·05